## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MICHAEL GREEN, et al.,              )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )            No. 4:23-CV-156 HEA
                                    )
NATIONWIDE MUTUAL                   )
INSURANCE COMPANY,                  )
                                    )
            Defendant.              )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Partial Summary Judgment. (ECF No. 40). Plaintiffs oppose the motion, which is fully briefed and ready for disposition. Also before the Court is Defendant's motion to exclude the opinions of Plaintiffs' disclosed expert, James Taylor. (ECF No. 38). For the reasons set forth below, Defendant's Motion for Partial Summary Judgment will be denied, and Defendants Motion to Exclude Expert Testimony will be granted in part and denied in part.

## I.  BACKGROUND

This cause of action involves an insurance dispute. Plaintiffs Michael and Karen Green are a married couple. Defendant Nationwide Mutual Insurance Company ("Nationwide") issued Plaintiff Michael Green a homeowner's policy, Policy Number 7224HR000565 (the "Policy") covering Green's home in Normandy, Missouri.

Plaintiffs filed a claim for loss under the Policy claiming that they had sustained loss covered by the Policy as a result of hail and wind. Plaintiffs allege that Nationwide mishandled their claim and failed to reimburse all covered losses under the Policy.

Plaintiffs originally filed suit in Missouri state court. They bring the following two counts in their Petition (hereinafter "Complaint"): breach of contract (Count I) and vexatious refusal to pay in violation of Mo. Rev. Stat. § 375.420 (Count II). For relief, Plaintiffs seek money damages, attorneys' fees, and costs. Nationwide removed the cause of action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## II.    MOTION FOR PARTIAL SUMMARY JUDGMENT

In the motion presently before the Court, Nationwide moves for the entry of summary judgment as to Plaintiffs' claim for vexatious refusal. Nationwide contends that the undisputed evidence in this case shows that it acted reasonably and was not recalcitrant or vexatious in the handling of Plaintiffs' claim. Nationwide also seeks the entry of judgment in its favor as to all claims brought by Plaintiff Karen Green. Defendant argues that none of the demands prior to the suit were made on Karen Green's behalf and, therefore, her claim for vexatious refusal to pay fails as a matter of law. Nationwide further argues that she is not a listed insured on the Policy, and all her claims should be dismissed.

### A.  Legal Standard

2

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).   Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999).   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson*, 477 U.S. at 248).

3

A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, *see Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

### B. Facts

Plaintiffs own a house in Normandy, Missouri that was insured under the Policy. In the rear is a sunroom with a flat roof covered with modified bitumen roofing.   The modified bitumen roofing was a relatively thin asphalt membrane that, from the photos, appeared to be about a quarter-inch thick and was attached to insulated aluminum roofing panels.   (ECF No. 41, Ex. 12).   The aluminum roofing panels were insulated with cardboard shaped like honeycomb.   The modified bitumen roofing was adhered directly to the insulated aluminum roofing panels, and there is evidence in the record that the modified bitumen roofing could not be removed without removing and replacing the roofing panels.   (*Id.*)

On September 8, 2021, following a storm, Plaintiffs noticed that there was a significant amount of water leaking into the sunroom from the sunroom's roof.   Shortly thereafter, Plaintiffs filed a claim with Nationwide.   On September 12, 2021, Nationwide sent an independent adjuster to examine Plaintiffs' property.   The independent adjuster, who inspected the sunroom and its roof, did not remove the tarp

that had been placed on the sunroom's roof, yet after receiving information from the adjuster, Nationwide afforded Plaintiffs coverage for the damaged sunroom roof due to hail and wind-driven rain.  (ECF No. 41, Ex. 5; No. 46, Ex. 4).  There is evidence in the record that a Nationwide claims adjuster told Plaintiff Michael Green sometime in September that the sunroom roof was fully covered, and that a Nationwide claims adjuster manager testified that as of October 11, 2021, Nationwide had agreed to provide coverage for the flat roof over the sunroom.  (ECF No. 46, Exs. 3, 4 and 10).

In late September or early October 2021, Plaintiffs began working with a roofing company, Shamrock Roofing ("Shamrock"), to replace the sunroom roof.   Shamrock's bid was submitted to Nationwide for approval.   After receiving the roofing contractor's bid but before it was approved and work began, Nationwide hired an engineering firm, Nederveld Engineering ("Nederveld"), to inspect the sunroom roof.   (ECF No. 46, Ex. 4 at 45-46).   There is a dispute of fact as to whether Nationwide or Plaintiffs requested the engineering inspection.   Nederveld inspected Plaintiffs' home on October 14 and completed its report on October 21, 2021.   (ECF No 47, Ex. 7).   In its report, Nederveld concluded that the sunroom's insulated roof panels were "undersized and/or improperly installed/detailed."   (ECF No. 41, Ex. 7 at 5-6).   Further, that "[t]he downward displacement of the roof is not the result of a specific environmental event." (*Id.*)   Nederveld also concluded "[t]he breach in the seam of the insulated panels" was "a recent occurrence and has resulted in the additional moisture intrusion entered the

5

first floor below. … The absence of rotting on the floor joists confirms that this was a sudden and recent occurrence."   (ECF No. 41, Ex 7 at 5-6).

While Nationwide waited to obtain Nederveld's engineering report, the sunroom roof remained tarped and unrepaired, and Plaintiffs' home sustained additional water infiltration on multiple occasions for more than a month after Plaintiffs made their claim.   (ECF No. 46, Exs. 3, 7, 11, 13 & 14).   During this time, Plaintiffs contacted Nationwide repeatedly and requested that they be allowed to repair the roof based on Shamrock's bid, but there is no evidence that Nationwide approved the bid.   (ECF No. 46, Exs. 4, 7, 8, and 11).   There is evidence that that the sunroom continued to take on water despite temporary remedial measures.   During the initial storm and/or subsequent rainfalls, the honeycomb cardboard insulation in the aluminum roofing panels became saturated and was structurally damaged by water infiltration.   Plaintiff Michael Green testified that when he first noticed the leak in early September, the sunroom roof did not appear sunken, but after additional water events, when he was emptying tubs of water leaking from the ceiling, the sunroom roof and interior ceiling began to sag.   (ECF No. 46, Ex. 15 at 130).

After receiving Nederveld's report, Nationwide took the position with regard to the sunroom roof that it would only cover replacement of the modified bitumen roofing, in other words, the top outside layer of the sunroom roof.   Nationwide decided that damage to the insulated roofing panels was due to "wear/tear, marring, deterioration,

faulty, inadequate, defective design, specifications, workmanship, construction, renovation or remodeling," which was not covered under the Policy.   (ECF No. 41, Ex. 11 at 3).   Nationwide has refused cover damage to the sunroom roof aside from the modified bitumen roofing, although it did cover other losses related to interior water damage, as well as roofing and gutters on other parts of the house.   It is not clear from the record how much Nationwide paid on the sunroom roof, when it was paid, or how much in damages remains in dispute.

### C.   *Discussion*

#### 1.  **Vexatious refusal**

In its motion for summary judgment, Nationwide argues that it is entitled to judgment as a matter of law as to Plaintiffs' claim of vexatious refusal to pay. Nationwide does not move for summary judgment on Plaintiffs' claim for breach of contract.

Under Missouri law, an insured party may recover statutory damages and attorney's fees when an insurance company refuses to pay for a "loss under a policy" if the company "has refused to pay such loss without reasonable cause or excuse."[1]   Mo.

---

[1] In cases where federal jurisdiction is based on diversity of citizenship, "[s]tate law governs the interpretation of insurance policies." *Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445, 447 (8th Cir. 2016) (cleaned up). The parties agree Missouri law applies to the claims in this case and, thus, the Court "[is] bound by the Supreme Court of Missouri's decisions." *W. Heritage Ins. Co. v. Asphalt Wizards*, 795 F.3d 832, 837 (8th Cir. 2015).   "[D]ecisions of the Missouri Court of Appeals are persuasive authority that [a court] must follow when they are the best evidence of what state law is."   *Turntine v. Peterson*, 959 F.3d 873, 883 (8th Cir. 2020).

Rev. Stat. § 375.420.   To establish a claim for vexatious refusal to pay, Plaintiffs must prove: (1) they had an insurance policy with the Nationwide; (2) Nationwide refused to pay; and (3) Nationwide's refusal to pay was without reasonable cause or excuse. *Macheca Transp. v. Philadelphia Indem. Ins. Co.*, 649 F.3d 661, 674 (8th Cir. 2011) (citing *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006)). "There is no vexatious refusal when the insurer has reasonable cause to believe and does believe there is no liability under its policy and that it has a meritorious defense." *Id.* (citing *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 55 (Mo. Ct. App. 1998)). However, "an insurer may insist upon a judicial determination of open questions of law or fact without being penalized." *Id.* (citing *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 109 (Mo. Ct. App. 2004)).   That said, "[t]he existence of a litigable issue, either factual or legal, does not preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant." *DeWitt v. Am. Fam. Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984). *See also TAMKO Bldg. Prods., Inc. v. Factual Mut. Ins. Co.*, 890 F. Supp. 2d 1129, 1141–42 (E.D. Mo. 2012); *Starr Indem. & Liab. Co. v. Cont'l Cement Co.*, No. 4:11CV809 JAR, 2013 WL 1442456, at *19 (E.D. Mo. Apr. 9, 2013).

Plaintiffs contend Nationwide delayed investigations of the damage, gave inconsistent coverage decisions, and refused to honor commitments it had made to Plaintiffs about coverage under the Policy.   Nationwide argues that its handling of

Plaintiffs' claim was timely, and there was a reasonable basis for the coverage it provided under the Policy.   Nationwide asserts that its handling of Plaintiffs' claim is supported by a "legitimate dispute" over what is covered under the Policy, and its denial of coverage was not "recalcitrant or vexatious" as it was based on an expert report and its interpretation of the Policy.

There is evidence in the record, albeit disputed, from which a trier-of-fact could reasonably conclude that before Nationwide hired Nederveld to inspect Plaintiffs' house, it had agreed to cover the sunroom roof – not just the top modified bitumen layer – and based on statements made by Nationwide's adjuster, Plaintiffs obtained a bid from a roofing company to repair and replace the sunroom's flat roof, but Nationwide did not approve the bid and repairs did not begin in a timely manner.   There is also evidence, which is in dispute, that it was Nationwide's decision to hire an engineer to do an additional inspection, which was done more than a month after the damage to the roof had occurred, and while Nationwide waited for the report, there were additional water events that further damaged the sunroom roof.   There is also disputed evidence in the record that Nationwide knew the modified bitumen roofing material on the sunroom roof was adhered to the roofing panels and could not be replaced without removing and replacing the damaged roofing panels.

As for the report upon which Nationwide relies for its coverage decision, Nederveld concluded that the roof panels above the sunroom were "undersized and/or

improperly installed/detailed" for their use in the sunroom, and "this condition displaced the roof and was not the result of a specific environmental condition."   (ECF No. 45 at 3, ¶ 8).   Plaintiffs contend Nationwide reliance on the report is not reasonable and point to the fact that Nederveld's inspection did not occur until a month after their initial claim and the sunroom roof had continued to take on gallons of water and sag. Plaintiffs also argue that there are inconsistencies in the Nederveld report, and the evidence and observations cited therein support a conclusion that damage to the sunroom roof was the result of a sudden event and not a defect or a progressive, deteriorating condition.

In general, questions of reasonableness are not amenable to resolution by way of summary judgment and are questions of fact for a jury to decide.   *Shirkey v. Guarantee Tr. & Life Ins. Co.*, 258 S.W.3d 885, 889 (Mo. Ct. App. 2008).   Based on the evidence in the record, the Court finds that there are genuine issues of material facts surrounding Nationwide's conduct handling of Plaintiffs' claim.   Viewing the facts in a light most favorable to Plaintiffs, there is evidence that Nationwide's delay and refusal to cover all the damage to the sunroom roof was vexatious and recalcitrant and without reasonable cause or excuse.   *DeWitt*, 667 S.W.2d at 710 (holding despite the existence of a litigable issue, there was substantial evidence upon which the jury could have found vexatious refusal to pay where jury may have considered the nine-month delay in partial payment, the adequacy in the investigation, and the reason given for denying the claim);

10

*Pace Props., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 918 S.W.2d 883, 888 (Mo. Ct. App. 1996) (affirming submission of vexatious refusal claim to jury where there was evidence that insurer's reliance on expert's investigation, which occurred more than one month after the accident, was unreasonable). Nationwide's Motion for Summary Judgment as to Count II will be denied.

### 2. Karen Green's Claims

Nationwide also moves for the entry of summary judgment as to claims brought by Plaintiff Karen Green. Nationwide argues Karen Green is not listed on the Policy and, therefore, is not a party to the contract. It also contends she never made a demand for coverage that Nationwide refused to pay. Nationwide seeks the entry of summary judgment as to Karen Green's claims as to both Counts I and II of the Complaint.

Plaintiffs concede that Micheal Green is the only named policyholder under the Policy. However, as a spouse, Karen Green is insured under the Policy. (ECF No. 1, Ex. 1 at 16). Further, in setting out the parties' agreement, the Policy defines "us" as Nationwide and "you" as the named insured and his or her spouse – in other words, Mr. and Mrs. Green. (*Id.* at 14). In addition, there is evidence in the record that Karen Green joined her husband in making demands that Nationwide pay for repairs to the sunroom roof. (ECF No. 46, Ex. 7). Nationwide has not established that it is entitled to summary judgment against Karen Green as to either Count I or II.

### III.   MOTION TO EXCLUDE EXPERT TESTIMONY

Nationwide also moves to exclude the opinions of James Taylor, Plaintiffs' retained expert, who is a licensed public adjuster, insurance appraiser, and IICRC-certified restorer.   According to Plaintiffs' disclosures, Mr. Taylor is expected to testify regarding Nationwide's handling and adjustment of Plaintiffs' claim, and its failure to cover the sunroom roof.   Nationwide moves to exclude Mr. Taylor's opinions regarding the following:

(1) coverage under the Policy;

(2) Nationwide's claims handling;

(3) Nederveld's engineering report; and

(4) SeekNow and Sedgwick Claims Management Services.

The parties submitted an extensive evidentiary record, which includes Mr. Taylor's expert report, curriculum vitae, deposition transcripts, and other exhibits.   The Court finds that it can make a proper *Daubert* determination without the need for an evidentiary hearing or oral argument.   *Miller v. Baker Implement Co.*, 439 F.3d 407, 412 (8th Cir. 2006) (district court need not hold a *Daubert* hearing where parties have opportunity to present argument and evidence before ruling on the motion).

## A.    *Legal standard*

The admission of expert testimony is governed by Federal Rule of Evidence 702, which provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise

12

if the proponent demonstrates to the court that it is more likely than not that:

    (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b)    the testimony is based on sufficient facts or data;

    (c)    the testimony is the product of reliable principles and methods; and

    (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The proponent of expert testimony must prove its admissibility by a preponderance of the evidence.  *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021).  *See also* Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule.") (citing Fed. R. Evid. 104(a)).

Courts have interpreted Rule 702 as vesting trial courts "with a gatekeeping function, ensuring that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Union Pac. R. Co. v. Progress Rail Servs. Corp.*, 778 F.3d 704, 709 (8th Cir. 2015) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993)).  In order to carry out this gatekeeping function, the Eighth Circuit has instructed district courts to apply the following three-part test for screening expert

testimony:    (1) "[The expert's] testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant"; (2) "the expert must be qualified to assist the finder of fact"; and (3) "the testimony must be reliable or trustworthy in an evidentiary sense." *In re Bair Hugger*, 9 F.4th at 777.    Disputes about the factual basis of an expert's testimony ordinarily implicate the credibility—not the admissibility—of the testimony. *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 450 (8th Cir. 2008); *see also Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006).    "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 954 (8th Cir. 2000) (quotation omitted).    According to the Eighth Circuit, Rule 702 favors admissibility of expert testimony if it assists the factfinder in understanding an issue of fact.    *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014).

### B.    Discussion

Nationwide argues Mr. Taylor's opinion that Nationwide should have afforded coverage under the Policy for the sunroom roof should be excluded because it is a legal opinion and invades the province of the jury.    Nationwide also argues that Mr. Taylor failed to review the Policy when making his opinion about coverage and, therefore, lacks a reasonable foundation to offer that opinion.    Defendant objects to Mr. Taylor's opinions about Nationwide's claim handling and argues that he fails to cite to a specific

14

statute or standard in support of his opinions. Nationwide further argues that Mr. Taylor is not an engineer and should not be allowed to offer an opinion about the Nederveld report. Nationwide further argues that Mr. Taylor's opinions about Nederveld and other third parties upon which Nationwide relied in handling Plaintiffs' claim amount to opinions about credibility that are inadmissible.

Plaintiffs respond that Mr. Taylor's testimony does not go to whether there is coverage under the Policy, but rather he is offering opinions as to the reliability of Nationwide claims handling process and the flawed investigatory information upon which Nationwide relied. Plaintiffs contend that Mr. Taylor's testimony addresses insurance industry standards and practices. Plaintiffs state that they agree Mr. Taylor cannot testify concerning the legal standard for vexatious refusal to pay under Missouri law or offer his opinion as to whether Defendant's conduct was vexatious under Missouri law.

Industry practices or standards may be relevant in insurance cases, and the Eighth Circuit has upheld the admission of opinion testimony addressing whether an insurance company handled a claim properly under industry practices. *Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 340, 343–44 (8th Cir. 2009) ("Industry-wide practices are relevant to the question of whether an insurer acts within acceptable boundaries based on information it has received in a given case."). *See also Am. Mod. Home Ins. Co. v. Thomas*, No. 4:16-CV-215 CDP, 2018 WL

15

4404723, at *7 (E.D. Mo. Sept. 17, 2018) (allowing insurance industry experts to testify as to industry practices and standards); *Certain Underwriters at Lloyd's v. SSDD, LLC*, No. 4:13-CV-193 CAS, 2014 WL 3097284, at *6 (E.D. Mo. July 7, 2014) (same).  In *American Model Home Insurance Company*, the district court allowed two insurance industry experts to testify as to "industry standards in general, proper claims handling, and the effect of certain information and circumstances on claims decisions." 2018 WL 4404723, at *7.  They were also allowed to "offer their opinion on whether any of [the defendant]'s actions deviated from insurance industry customs and practices." *Id.* However, noting that an expert "may not intrude on the Court's role to instruct the jury as to the law and testify to a legal conclusion," the court did not allow the experts to testify regarding "the legal standard of vexatious refusal to pay under Missouri law or to their opinion as to whether or not [the defendant]'s conduct was vexatious under Missouri law." *Id.*

Here, Mr. Taylor has extensive knowledge about restoration and common practices in adjusting and handling claims in the insurance industry.  He is licensed public adjuster, insurance appraiser, and IICRC-certified restorer with significant experience in insurance claims handling, loss assessment, and industry-standard compliance.  He has worked in field of remediation since 2000, and as an insurance adjustor and appraiser since 2019.  His professional background includes experience in water intrusion and hail damage assessments and structural loss analysis.  Taylor

16

holds a public adjuster license with multi-state reciprocity, including Missouri, and maintains IICRC certification in restoration practices.   Nationwide does not challenge Mr. Taylor's qualifications as an expert, and he will be permitted to testify regarding insurance industry practices and standards in general, proper claims handling, how certain information affects claims decisions, and whether Nationwide's actions deviated from insurance industry customs and practices.   *Cedar Hill Hardware & Const. Supply, Inc.*, 563 F.3d at 340; *Am. Mod. Home Ins. Co.*, 2018 WL 4404723 at *7.   Mr. Taylor will not be allowed to offer a legal opinion as to whether Nationwide breached the terms of the Policy and/or its conduct was vexatious under Missouri law.   *Id.*

Nationwide argues Mr. Taylor's opinions should be excluded because during his deposition he often could not point to a specific state insurance statute upon which he was basing his opinion.   In offering his opinions, Mr. Taylor does reference a number of IICRC standards for water damage restoration, but most of his opinions are based on his experience in the restoration and insurance industries.   The fact that Mr. Taylor could not point to a specific state statute in answering depositions questions does not render his opinions unreliable or inadmissible.   He is not offering a legal opinion as to whether Nationwide violated Missouri law, but rather his opinion goes to whether Nationwide's handling of Plaintiffs' claim was reasonable.

In moving to exclude Mr. Taylor, Nationwide relies extensively on *Thomas v. State Farm Mutual Automobile Insurance Company,* a case that is distinguishable from

the case at hand. 712 F. Supp. 3d 1229 (E.D. Mo. 2024).    In *Thomas*, the district court excluded an attorney from testifying as to whether the insurance company's conduct amounted to vexatious refusal under Missouri law.    The court found the attorney was not an expert in insurance practices and standards, but rather she was a legal expert who "formed the opinions in her report by applying her knowledge of the law to the facts of the case, which is not allowed." *Id.* at 1236.    Mr. Taylor is not an attorney offering a legal opinion as to whether Nationwide complied with Missouri law.    He is a licensed public adjuster and former restorer, and he is an expert in insurance industry practices and standards.    He is offering opinions as to whether Nationwide's handling of Plaintiffs' claim was in line with practices in the insurance industry, which goes to the issue of reasonableness and is admissible. *Cedar Hill Hardware & Const. Supply, Inc.*, 563 F.3d at 343–44; *Am. Mod. Home Ins. Co.*, 2018 WL 4404723 at *7. *See, also, Ray v. Wal–Mart Stores, Inc.*, 120 F.3d 882, 884 (8th Cir.1997) (expert could testify that Wal–Mart's inspections were not in line with the practices of other retail establishments); *CBY Sys. Inc. v. RSP Co.*, 33 F.3d 925, 929 (8th Cir.1994) (expert testimony about whether franchise had adequate site review and evaluation process in place based on industry practices was admissible).    Nationwide will be allowed to cross examine Mr. Taylor about his experience in the insurance industry and the bases for his opinions.

Nationwide also objects to Mr. Taylor's opinions about the Nederveld engineering report.  Nationwide argues Mr. Taylor is not an engineer and, therefore, he cannot offer opinions regarding the engineering report.  As an expert in the fields of restoration and insurance claims, Mr. Taylor will be allowed to testify as to how engineering and adjuster reports are used in the insurance industry, what claims adjustors look for in such reports when handling claims, and his opinion, as an experienced adjustor, as to why he does or does not find the Nederveld report reliable, for example, what pertinent information might be missing from the report that would aid in making a decision on a claim.   That said, the Court agrees with Nationwide that Mr. Taylor is not a structural engineer, and he will not be allowed to offer opinion testimony that goes to structural design or defects in the roof.

Nationwide also claims that Mr. Taylor has offered improper credibility opinions about Nederveld and two other third-party companies, SeekNow and Sedgwick Claims, whose services Nationwide used pre-litigation in this suit.   As an example, Nationwide points to Mr. Taylor's testimony in which he stated that SeekNow "does a lot of shady work."  (ECF No. 39 at 12).   Mr. Taylor will not be allowed to offer unfounded opinion testimony about the three third-party companies, Nederveld, SeekNow, and Sedgwick Claims.   He will, however, be allowed to testify as to whether their practices, including their inspections, reports, or other services, were in line with insurance industry practices.

19

In sum, Plaintiffs have shown by a preponderance of the evidence that Mr. Taylor's specialized knowledge of practices within the fields of restoration and insurance, including the handling of insurance claims, is relevant, helpful, and reliable as testimony in this case.   Mr. Taylor may offer his opinions regarding Nationwide's handling of Plaintiffs' claim and whether it was consistent with industry customs and practices.

## IV.    CONCULSION

In sum, Nationwide has failed to establish that it is entitled to summary judgment as to Plaintiffs' claim for vexatious refusal to pay.   Further, Nationwide is not entitled to summary judgment as to the claims brought by Plaintiff Karen Green, as she is insured under the Policy, and there is evidence that she made demands for coverage. Finally, the Court will allow James Taylor to testify as an expert in this case, although he will not be allowed to give legal opinions or provide unfounded opinions or expert testimony in areas outside his areas of expertise.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Nationwide Mutual Insurance Company's Motion for Partial Summary Judgment is **DENIED**.   [ECF No. 40]

**IT IS FURTHER ORDERED** that consistent with this Opinion, Memorandum, and Order, Defendant Nationwide Mutual Insurance Company's Motion to Exclude

Expert Testimony of James Taylor is **GRANTED in part and DENIED in part.**

[ECF No. 38]

Dated this 12th day of May, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE